UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE BROECKER,<br><br>                    Movant,<br><br>          vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 4:22-CV-04089-KES<br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

This matter is before the court on the motion of Stephanie Broecker to vacate, correct, or set aside her sentence pursuant to 28 U.S.C. § 2255.  See Docket No. 1.[1]  Now pending is a motion by the United States ("government") to dismiss Ms. Broecker's motion without holding an evidentiary hearing.  See Docket No. 23.  This matter was referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and D.S.D. Local Rule 57.11.

## FACTS

### A.    Preplea Matters

Ms. Broecker was charged by indictment with knowingly and intentionally distributing heroin to K.P., whose death resulted from the use of

---

[1] Documents cited from this civil habeas file will be cited using the court's assigned docket number.  Documents from Ms. Broecker's underlying criminal case, United States v. Broecker, 4:18-CR-40027-KES (D.S.D.), will be cited using the court's assigned docket number preceded by "CR."

the heroin in violation of 21 U.S.C. § 841(a)(1).  CR Docket No. 1.  Ms. Broecker

was arrested in the Northern District of Illinois and afforded a hearing

pursuant to Federal Rule of Criminal Procedure 5(c)(3).  CR Docket No. 9.  She

then made an initial appearance in the District of South Dakota at which the

Federal Public Defender was appointed to represent her.  CR Docket No. 14.

Ms. Broecker was released on bond at this hearing.  CR Docket No. 15.

   A short time later, attorney Rick L. Ramstad was retained by

Ms. Broecker and made his notice of appearance in the case.  CR Docket

No. 31.  Illinois attorney Lawrence S. Beaumont was then admitted *pro hac vice*

as co-counsel retained to represent Ms. Broecker.  CR Docket No. 36.

**B.     Plea Agreement**

   **1.     Written Documents**

   A written plea agreement, plea agreement supplement, and statement of

factual basis were filed with the court signed by the prosecutor, Ms. Broecker,

Mr. Ramstad, and Mr. Beaumont.  CR Docket Nos. 51-53.  Under the terms of

the plea agreement, Ms. Broecker agreed to plead guilty to the charge in the

indictment, which the written plea agreement stated carried a mandatory

minimum prison sentence of 20 years and a maximum sentence of life

imprisonment.  CR Docket No. 51 at p. 2, ¶ C.

   In return, the government agreed that it would recommend Ms. Broecker

receive up to three points downward adjustment in the calculation of her

United States Sentencing Guidelines (USSG) range for accepting responsibility.

Id. at pp. 3-4, ¶¶ E & F.  Under the plea agreement, Ms. Broecker waived her

2

right to appeal all issues except (1) jurisdictional issues and (2) any upward departure or upward variance at sentencing.  Id. at p. 6, ¶ N.

The statement of factual basis in support of the plea agreement stated as follows:

> My name is Stephanie Broecker.
> On or about November 16, 2017, I mailed heroin from Rockford, Illinois, to [K.P.] in Fedora, South Dakota, utilizing the United States Postal Service.  [K.P.] received the U.S. Postal parcel that contained the heroin on November 18, 2017, in South Dakota.  [K.P.] ingested the heroin that I sent him in the evening of November 18, 2017, and early morning hours of November 19, 2017.  On November 19, 2017, [K.P.] died.  Minnehaha County Coroner Dr. Kenneth Snell determined that [K.P.]'s cause of death was heroin toxicity, and that but for the use of the heroin I sent [K.P.], he would not have died on November 19, 2017.

CR Docket No. 52.  The statement of factual basis was signed by the prosecutor, Ms. Broecker, Mr. Ramstad, and Mr. Beaumont.  Id. at p. 2.  All of the written plea documents were dated December 5 and 6 and were filed with the court on December 6, 2018.

### 2.    Change of Plea Hearing

Four days after the written plea documents were filed, a change of plea hearing was held before the district court.  CR Docket No. 55.  Mr. Ramstad appeared at the hearing with Ms. Broecker.  CR Docket No. 96 at p. 2 (Change of Plea hearing transcript).  At the beginning of the hearing, Ms. Broecker was placed under oath, so all the below-described testimony she gave was given under penalty of perjury.  Id.  Ms. Broecker testified she understood she was required to answer the court's questions truthfully.  Id.

Ms. Broecker testified she was "absolutely" fully satisfied with the counsel, representation, and advice she received from her attorneys.  Id. at p. 5.  Ms. Broecker testified she first went over the plea agreement with Mr. Beaumont and then went over the plea agreement again with Mr. Ramstad. Id.  She told the court she had read and discussed the plea agreement with both of her lawyers before she signed it.  Id. at pp. 5-6.  She testified no other promises had been made to her other than those contained in writing in the plea agreement and plea agreement supplement.  Id. at p. 6.  Ms. Broecker assured the court no one had threatened her or forced her to accept the plea agreement.  Id. at pp. 6-7.

The court told Ms. Broecker if she pleaded guilty, there would be a mandatory minimum period of prison of not less than 20 years and up to a maximum of life imprisonment.  Id. at p. 8.  The court asked Ms. Broecker if she understood she would be subject to this mandatory minimum sentence and possible maximum sentence if she plead guilty.  Id.  Ms. Broecker told the court, under oath, that she understood this.  Id.

The court explained that, under the plea agreement, Ms. Broecker would be waiving, or giving up, her right to appeal all issues except for jurisdiction and any upward variance or departure.  Id. at p. 10.  Ms. Broecker stated she understood.  Id.

The court told Ms. Broecker she had a right to stand by her previously-entered not guilty plea and to have a jury trial.  Id.  At a trial, the government would have to prove Ms. Broecker's guilt beyond a reasonable doubt.  Id.  In

4

order to do so, the court informed Ms. Broecker that the government would have to prove:

> That on or about November 16, 2017, you intentionally transferred or provided a controlled substance, namely, heroin, to K.P. in the District of South Dakota,that at the time of the transfer you knew that it was heroin, and that K.P. would not have died but for the use of that same controlled substance, heroin, provided by you to him.

Id. at p. 12.  When the court asked Ms. Broecker if she understood this is what the government would have to prove if she went to trial, Ms. Broecker responded "yes, Your Honor."  Id.

The court asked Ms. Broecker if she had read the factual basis statement before she signed it.  Id.  She responded she had.  Id.  She also told the court that everything in the statement was true.  Id.

At the conclusion of the hearing, the government asked that Ms. Broecker be detained post-plea.  Id. at p. 16.  Mr. Ramstad argued for Ms. Broecker's continued release.  Id. at pp. 16-17.  He stated she had demonstrated she was neither a flight risk nor a danger, she had no criminal record, and was engaged in both mental health counseling and substance abuse treatment at the time.  Id.  Mr. Ramstad stated, "[s]he is going to be sentenced to a very lengthy term of incarceration, regardless of how this comes out, and we would like her to have the opportunity to, as best she can, prepare herself for this period of incarceration."  Id. at p. 17.  He asked the court to allow Ms. Broecker to continue her counseling.  Id.

The court noted that detention was mandatory unless the government planned to recommend no jail time.  Id. at p. 18.  The court then asked the

5

government attorney if she would be recommending no jail time at sentencing. Id. The prosecutor responded, "[n]o, Your Honor.  I am going to be recommending the mandatory minimum 20-year sentence be imposed."  Id. Accordingly, there being no extraordinary circumstances, the court ordered Ms. Broecker to be taken into custody.  Id. at pp. 18-19.

## C.    Ms. Broecker's Attempt to Withdraw Her Plea

### 1.    Motion and Response

Two months after she had entered a plea of guilty to the indictment, a draft presentence investigative report (PSR) was filed indicating that the mandatory minimum sentence Ms. Broecker could receive was 20 years' imprisonment.  CR Docket No. 57 at p. 15, ¶¶ 77-78.  Two weeks later, Ms. Broecker moved to discharge Mr. Beaumont as her retained lawyer and to have Mr. Ramstad appointed as court-appointed counsel.  CR Docket No. 58. The court granted the motion, discharging Mr. Beaumont and appointing Mr. Ramstad.  CR Docket No. 62.  The final PSR was disclosed a little more than a month later.  CR Docket No. 66.

One week after the final PSR was filed, Mr. Ramstad moved to continue Ms. Broecker's sentencing date.  CR Docket No. 70.  He filed an affidavit in support of the motion indicating that he had consulted with former Minnehaha County Coroner Dr. Brad Randall regarding the toxicology reports and that he was also consulting with Dr. Julia Pearson, Chief Forensic Toxicologist at Hillsborough County Medical Examiner's Office of Tampa/St. Petersburg, Florida.  CR Docket No. 72 at pp. 2-3.  Mr. Ramstad asked for additional time

to consult with these experts to determine whether the heroin Ms. Broecker provided to K.P. was the but-for cause of K.P.'s death.  Id.

More than six weeks after the final PSR was disclosed, Mr. Ramstad filed a motion with the court to obtain a subpoena *duces tecum* for Axis Forensic Toxicology and Sanford Health Pathology Clinic for records on the toxicology testing done on K.P.  CR Docket No. 76.  As an attachment to his motion, Mr. Ramstad attached a letter to the prosecutor from two days before in which he indicated he was consulting with a toxicologist, Dr. Eugene Schwilke, regarding the testing which formed the basis for the coroner's opinion that K.P. died as a result of a heroin overdose.  CR Docket No. 76-5; Docket No. 82.  The district court granted the motion for the subpoenas.  CR Docket No. 77.

Two months after issuance of the subpoenas, and seven months after Ms. Broecker pleaded guilty, Ms. Broecker moved to withdraw her guilty plea. CR Docket No. 85.  Counsel argued that the government was required to prove K.P.'s ingestion of the heroin Ms. Broecker sent him was the but-for cause of his death.  CR Docket No. 88 at pp. 5-6.  Counsel then argued that the presence of fentanyl in K.P.'s toxicology reports was sufficient to show that K.P. died from fentanyl toxicity, not heroin toxicity.  Id. at pp. 15-17.

Counsel attached several exhibits to his motion.  There was a Google® search, an interview of Joshua Johnson (K.P.'s friend), some social media posts by K.P., a search warrant issued by a state court judge, a photograph of K.P. and two others, a DEA test result on the heroin Ms. Broecker has sent showing it was 89% pure, evidence inventory sheets for searches conducted on the date

7

of K.P.'s death, a Sanford Health Pathology Clinic report, an Axis Forensic Toxicology report, and a report by South Dakota Division of Criminal Investigation Special Agent Scot Hawks regarding Dr. Snell's report.  CR Docket No. 88-1.  None of the exhibits consisted of an expert opinion or report stating that heroin was not the but-for cause of K.P.'s death.  Id.

In response to Ms. Broecker's motion to withdraw her plea, the government filed a motion seeking discovery.  CR Docket No. 92.  The government argued that, by asserting her counsel's ineffective assistance of counsel as a ground for withdrawing her plea, Ms. Broecker had waived the attorney-client privilege and made her own lawyers witnesses.  CR Docket No. 93 at p. 2.  The government requested the opportunity to obtain relevant information from both Mr. Ramstad and Mr. Beaumont.  Id. at pp. 4-5.

The court agreed and directed Ms. Broecker to either sign a waiver of attorney-client privilege as to both lawers, or her allegations of ineffective assistance would not be considered in ruling on the motion to withdraw the plea.  CR Docket No. 94.  Ms. Broecker then signed a waiver of attorney-client privilege as to both lawyers.  CR Docket No. 95.

Mr. Ramstad then filed an affidavit and attachments largely repeating the allegations previously made:  that is, that Ms. Broecker believed Mr. Beaumont rendered ineffective assistance of counsel by failing to hire a toxicology expert to opine that heroin ingestion was not the but-for cause of K.P.'s death.  CR Docket No. 102.  No written affidavit from Mr. Beaumont appears in the record of the criminal proceedings.

## 2.    Evidentiary Hearing

An evidentiary hearing was then held on Ms. Broecker's motion to withdraw her plea.  CR Docket No. 116.  Three exhibits were introduced but none of the documents consisted of an expert opinion calling into question the government's expert opinion as to K.P.'s cause of death.  CR Docket No. 118. At the hearing, Ms. Broecker, Michelle Broecker, and Elizabeth Broecker all testified.  CR Docket No. 147.  No expert testified as to the but-for cause of K.P.'s death.  Id.  In addition, neither Mr. Ramstad nor Mr. Beaumont testified.  Id.

## 3.    The District Court's Decision Denying the Motion

The district court issued a written opinion denying Ms. Broecker's motion to withdraw her plea.  CR Docket No. 119.  Regarding the facts, the court set forth the fact that Ms. Broecker had mailed the heroin to K.P. along with a note warning K.P. to be careful when using the drug.  Id. at p. 1.  K.P. was then found dead on November 19, 2017, after a night of drug use with friends.  Id. at pp. 1-2.

K.P.'s blood tested positive for morphine and THC.  Id. at p. 2.  His urine contained methamphetamine, fentanyl, codeine, morphine, and 6-monoacetylmorphine.  Id.  The heroin Ms. Broecker mailed to K.P. tested 89 percent pure.  Id.  No other substances were identified.  Id.

The court then recited the details of the written plea agreement, including the statement of factual basis, and the details of the change of plea hearing.  Id. at p. 3.  The court noted that at the change of plea hearing,

9

Ms. Broecker testified under oath that she was "fully satisfied with the counsel, representation, and advice that [she] received." Id.

At the evidentiary hearing on the motion to withdraw her plea, Ms. Broecker testified she understood Mr. Beaumont was intending to hire an expert toxicologist, but that she knew he had not done so at the time she entered her guilty plea. Id. at p. 5. Ms. Broecker testified that Mr. Beaumont never told her he had hired an expert. Id.

Ms. Broecker's mother testified at the hearing that Mr. Beaumont had told her it would be unavailing to hire a competing toxicologist because, at a trial, the jury might well disbelieve the defense's expert and convict Ms. Broecker. Id. at p. 6. The mother testified Mr. Beaumont told her the best strategy would be for Ms. Broecker to enter a guilty plea. Id. The mother also testified that Mr. Beaumont said the fact that the heroin was found in K.P.'s blood, not urine, showed that it was heroin that caused his death. Id.

The court then applied the law concerning withdrawal of a guilty plea to the facts before the court. Id. at p. 8. Assertions of ineffective assistance of counsel are not "fair and just" reasons for withdrawing a guilty plea where the ineffective assistance claim "directly contradicts statements [a defendant] made under oath at [her] guilty plea hearing . . . that [she] was totally satisfied with [her] attorney's legal assistance." Id. (quoting United States v. Trevino, 829 F.3d 668, 672 (8th Cir. 2016) (quoting United States v. Gomez, 326 F.3d 971, 974 (8th Cir. 2003))).

10

The court held both Ms. Broecker's and her mother's testimony established that Ms. Broecker knew at the time she entered a guilty plea that Mr. Beaumont had not hired a toxicologist, yet she testified at the change of plea hearing that she was "absolutely" satisfied with his representation of her. Id. at p. 9.  This testimony contradicted Ms. Broecker's current claim of ineffective assistance of counsel.  Id.

Ms. Broecker also testified that her counsel provided ineffective assistance of counsel for leading her to believe she would receive little to no prison time if she entered a guilty plea.  Id.  But Ms. Broecker testified under oath at her change of plea hearing that she understood she was subjecting herself to a mandatory minimum sentence of 20 years by pleading guilty.  Id.  Ms. Broecker also admitted at the evidentiary hearing that the government never told her it would seek any sentence other than the mandatory minimum. Id. at p. 10.  This allegation of ineffective assistance of counsel also contradicted Ms. Broecker's prior sworn testimony and thus did not constitute a "fair and just" reason for withdrawing the plea.

Another factor the court considered in determining whether to allow Ms. Broecker to withdraw her plea of guilty is whether she claimed to be legally innocent.  Id. at pp. 10-11.  The court noted Ms. Broecker did not deny selling the heroin to K.P. nor did she deny that K.P. ingested the heroin and later died. Id.  Ms. Broecker was not even asserting that the heroin was not the cause of K.P.'s death.  Id.  Instead, Ms. Broecker was asserting that the government would be unable to prove that the heroin was the but-forcause of K.P.'s death.

11

Id. This did not amount to a claim of legal innocence the court concluded. Id. at p. 11.

Another factor the court considered was the lapse of time between the entry of the guilty plea and the request to withdraw it. Id. The court noted that Ms. Broecker's request to withdraw her plea came more than seven months after the plea was entered. Id. at pp. 11-12. The court also noted the motion was made two weeks after the disclosure of the draft PSR, thus suggesting the motion was prompted by "[p]ost-plea regrets . . . caused by contemplation of the prison term [s]he faces," rather than a fair and just reason. Id. at p. 12 (quoting United States v. Davis, 583 F.3d 1081, 1089 (8th Cir. 2009)).

Finally, the court found the government would suffer prejudice if Ms. Broecker were allowed to withdraw her plea. Id. at pp. 12-13. K.P.'s blood sample was destroyed (as per standard protocol)[2] and Mr. Beaumont represented to the government at the time that Ms. Broecker would be accepting a plea agreement. Id. at p. 13. If Ms. Broecker were allowed to withdraw her plea now, the government would be deprived of the opportunity to further analyze K.P.'s blood sample to disprove Ms. Broecker's assertion that

---

[2] Even though K.P.'s blood sample was destroyed, nine tissue samples were preserved in paraffin and were available to both the government and to Ms. Broecker in the time frame between Ms. Broecker's plea and her sentencing. See CR Docket No. 82 at p. 2, ¶ 9. Despite knowing of these tissue samples in May 2019, as of July 2019, Mr. Ramstad never had the samples tested. Compare CR Docket No. 82 at p. 2, ¶ 9, with CR Docket No. 88 at pp. 15-16 (stating the nature of the samples was still unknown).

fentanyl caused K.P.'s death.  Id.  For all these reasons, the court denied

Ms. Broecker's motion.

**D.      Sentencing**

Ms. Broecker was sentenced to 20 years' imprisonment, the mandatory

minimum sentence applicable to the crime to which she pleaded guilty.  CR

Docket No. 127 at p. 2.

**E.      Direct Appeal**

Ms. Broecker appealed.  CR Docket Nos. 142, 152.  Ms. Broecker argued

the district court erred by refusing to allow her to withdraw her guilty plea.

United States v. Broecker, 840 Fed. Appx. 49, 50 (8th Cir. 2021) (*per curiam*).

The Eighth Circuit rejected this argument, noting that Ms. Broecker waited too

long before moving to withdraw her plea and the motion came after she had

"expressed unconditional satisfaction with her attorneys while pleading guilty."

Id.  The court also held the record at the change of plea hearing abundantly

established that Ms. Broecker was informed of the mandatory minimum

penalty.  Id.

**F.      Claims Raised in Ms. Broecker's § 2255 Motion**

Ms. Broecker raises three claims for relief in her § 2255 motion:

1.      trial counsel rendered ineffective assistance of counsel for
failing to investigate possible defenses and properly advise her,
violating Ms. Broecker's Sixth Amendment right to effective
assistance of counsel.

2.      trial counsel had a conflict of interest that adversely affected
her, violating her Sixth Amendment right to effective assistance of
counsel.

13

      3.     the government violated Ms. Broecker's Due Process rights
by failing to timely produce the exculpatory toxicology records.

Docket No. 1 at pp. 5, 7.

      The government now moves to dismiss Ms. Broecker's claims without

holding an evidentiary hearing.  Docket No. 23.  Ms. Broecker resists the

motion.  Docket No. 27.

## DISCUSSION

### A.    Scope of a § 2255 Motion

      Section 2255 of Title 28 of the United States Code was enacted to

supersede habeas corpus practice for federal prisoners.  Davis v. United States,

417 U.S. 333, 343-44 (1974).  Section "2255 was intended to afford federal

prisoners a remedy identical in scope to federal habeas corpus."  Id. at 343.

Prior to the enactment of § 2255, habeas claims had to be brought in the

district where the prisoner was confined, resulting in overburdening those

districts where federal correctional institutions were located and presenting

logistical issues because the record in the underlying criminal case was often

in a distant location.  United States v. Hayman, 342 U.S. 205, 212-16 (1952).

The enactment of § 2255 resolved these issues by requiring that the motion be

filed in the sentencing court.  Id.

      The scope of a § 2255 motion is seemingly broader than the scope of a

habeas petition, the latter of which is typically limited to allegations of a

constitutional dimension.  Section 2255 allows a federal prisoner to "vacate, set

aside or correct" a federal sentence "upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that

14

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." See 28 U.S.C. § 2255(a). Where the allegation for relief is *not* based on a violation of a Constitutional or federal statutory right or an assertion that the court was without jurisdiction, the Supreme Court has read a "fundamentality" requirement into § 2255—relief is available for only those errors which constitute a "fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962); see Peguero v. United States, 526 U.S. 23, 27-30 (1999) (noting collateral relief may be appropriate when a movant is prejudiced by a court's error).

Generally, petitioners are precluded from asserting claims pursuant to § 2255 that they failed to raise on direct appeal. United States v. Frady, 456 U.S. 152, 158-59,167-68 (1982); United State v. Darden, 915 F.3d 579, 586 (8th Cir. 2019) (finding proper standard for reviewing claims not raised on direct appeal is cause and prejudice). When a § 2255 petitioner asserts a claim that is procedurally defaulted because it was not raised on direct appeal, the claim can only proceed after the petitioner has shown either: (1) actual innocence or (2) that the procedural default should be excused because there was both cause for the default and actual prejudice to the petitioner. Bousley v. United States, 523 U.S. 614, 621-22 (1998); McNeal v. United States, 249 F.3d 747, 749 (8th Cir. 2001). Therefore, barring a claim of actual innocence,

a petitioner must show both cause for why he failed to raise an issue on direct appeal as well as actual prejudice caused by the alleged errors. If a movant fails to demonstrate prejudice, the court need not address whether cause exists to excuse a procedural default. <u>Moore-El v. Luebbers</u>, 446 F.3d 890, 898 (8th Cir. 2006).

Appellate courts generally refuse to review claims of ineffective assistance of counsel on direct appeal; such claims are, therefore, properly addressed in a 28 U.S.C. § 2255 motion such as the one here. <u>See</u> <u>United States v. Campbell</u>, 6 F.4th 764, 775-76 (8th Cir. 2014); <u>United States v. Lee</u>, 374 F.3d 637, 654 (8th Cir. 2004) ("[I]neffective assistance of counsel [claims] are generally not cognizable on direct appeal" and "may be heard only if a miscarriage of justice would otherwise result . . . or if the district court has developed a record on the issues."). Therefore, no procedural default analysis is required before examining petitioner's claims of constitutionally-deficient counsel.

## B.  Ineffective Assistance of Counsel—Claims One and Two

### 1.  The Standard for Ineffective Assistance Claims

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. U.S. Const. amend. VI. The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.'" <u>Strickland v. Washington</u>, 466 U.S. 668, 698 (1984) (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970)). <u>Strickland</u> is the benchmark case for determining whether counsel's assistance

was so defective as to violate a criminal defendant's Sixth Amendment rights
and require reversal of a conviction.  Id. at 687.

"When a convicted defendant complains of the ineffectiveness of
counsel's assistance, the defendant must show that counsel's representation
fell below an objective standard of reasonableness."  Id. at 687-88.  The
defendant must also show that counsel's unreasonable errors or deficiencies
prejudiced the defense and affected the judgment.  Id. at 691.  The defendant
must show, "there is a reasonable probability that, absent the errors, the
factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In
sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction or death sentence resulted from
> a breakdown in the adversary process that renders the result
> unreliable.

Id.

"There is a presumption that any challenged action was sound trial
strategy and that counsel rendered adequate assistance and made all
significant decisions in the exercise of professional judgment."  Hall v.
Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the
petitioner's burden to overcome this presumption, and a "petitioner cannot
build a showing of prejudice on a series of errors, none of which would by itself

17

meet the prejudice test." Id.  Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation.  Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  " 'American Bar Association standards and the like' are 'only guides' to what reasonableness means, not its definition." Id. at 8 (quoting Strickland, 466 U.S. at 688).

The Supreme Court distinguishes between those cases "in which the new evidence would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result.  Porter v. McCollum, 558 U.S. 30, 41 (2009).  In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding" and "reweigh it against the evidence in aggravation."  Id. at 40-41 (quotations omitted).  It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome."  Id. at 44 (quoting Strickland, 466 U.S. at 693-94).  "Judicial scrutiny of counsel's performance must be highly deferential" with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Strickland, 466 U.S. at 698.

### 2.      Claim One—Failure to Investigate & Misinformation as to Sentence

Ms. Broecker states her claim broadly, but in discussing specifics, she is really only asserting counsel was deficient in two respects.  She asserts that

counsel was ineffective for failing to hire a toxicologist to attempt to refute the government's opinion from Dr. Snell that K.P.'s ingestion of the heroin Ms. Broecker sold him was the but-for cause of his death. Docket No. 10 at pp. 15-21. She also asserts counsel was ineffective for materially misinforming her of the likely sentence she would receive. Id.

### a. Relitigation

The government argues Ms. Broecker should be precluded from raising claim one because it is essentially the same claim she raised in her direct appeal. Docket No. 24 at pp. 24-27. One is not allowed to relitigate claims raised on appeal in a § 2255 action. Sun Bear v. United States, 644 F.3d 700, 702 (8th Cir. 2011) (en banc) (citing Davis v. United States, 417 U.S. 333, 346-47 (1974)); United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001); United States v. McGee, 201 F.3d 1022, 1023 (8th Cir. 2000) (per curiam).

Claims of ineffective assistance of counsel are not usually considered on appeal because there is usually not a complete development of the record in the district court as to that issue when a direct appeal is heard. Campbell, 6 F.4th at 775-76; Lee, 374 F.3d 654. Here, the government argues that because an evidentiary hearing was held on Ms. Broecker's motion to withdraw her plea of guilty, the record as to ineffective assistance was fully developed at the district court level prior to the appeal. Thus, the government argues, the raising of the issue on appeal should preclude Ms. Broecker from relitigating the issue in this § 2255 motion.

However, no affidavit from Mr. Beaumont was in the record during the direct criminal proceedings or on direct appeal. Because there is new evidence to consider—Mr. Beaumont's affidavit submitted in this § 2255 motion—the court finds the record was *not* fully developed in the direct criminal proceedings. Ms. Broecker's side of the story was in the record, but Mr. Beaumont's side of the story was not heard. Because of this, the court does not preclude consideration of Ms. Broecker's claim number one on the basis that it constitutes religitation of a claim previously raised.

### b.    A Valid Plea Precludes Collateral Attacks on Pre-Plea Matters

But both of the claims Ms. Broecker makes in claim one concern matters of alleged malfeasance which occurred prior to Ms. Broecker's guilty plea. When a criminal defendant enters a valid plea of guilty, that circumscribes the claims that can be raised in a § 2255 motion such as this. When a § 2255 petitioner has been convicted in her direct criminal proceedings by entering a guilty plea, the scope of issues available to be raised in habeas proceedings is curtailed. As the Supreme Court has stated:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [McMann v. Richardson, 397 U.S. 759 (1970)].
>
> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every

20

conceivable constitutional [issue] he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry.  And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain historical facts, . . . it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).

The Supreme Court has explained why a guilty plea cuts off all constitutional claims that predate a plea.  Pleas are necessarily based on imperfect knowledge of the law and facts—one can only know what the result of a full-blown jury trial will be after the trial has been had, and even then, truth is still often in dispute.  McMann, 397 U.S. 769-70.  If a defendant admits his commission of a crime, upon good faith, reasonably competent advice from his counsel, the defendant assumes the risk that his attorney might be wrong about the facts or the outcome of a legal issue.  Id. at 774.

The issue presented in habeas proceedings is not whether—in retrospect—counsel was right or wrong about a certain fact or legal analysis, but rather, whether the defendant's plea was made voluntarily and intelligently and upon advice from his attorney that was "within the range of competence demanded of attorneys in criminal cases."  Id. at 770-71.  Therefore, a defendant who pleaded guilty because he believed a coerced confession would be used against him at trial is not entitled to an evidentiary hearing in a habeas proceeding without showing other, extenuating circumstances.  Id. at 771.

A voluntary and knowing plea is not transformed into a coerced plea simply because the defendant pleaded guilty to obtain a lesser sentence than the maximum possible penalty that would have been applicable if defendant had been convicted at trial.  Brady v. North Carolina, 397 U.S. 742, 751 (1970); Parker v. North Carolina, 397 U.S. 790, 795 (1970).  Guilty pleas are valid if the court record affirmatively discloses the plea was both voluntary and intelligent.  Boykin v. Alabama, 395 U.S. 238, 242 (1969).

A plea is voluntary if it is made by a defendant who is "fully aware of the direct consequences, including the actual value of any commitments made to h[er] by the court, prosecutor, or h[er] own counsel," and so long as the plea was not induced by threats, misrepresentation, or by promises that are improper, unfulfilled, or unfulfillable.  Brady, 397 U.S. at 755.

A plea is intelligently made if the defendant was aware of the nature of the charge against her, and she was mentally competent and in control of her mental faculties.  Brady, 397 U.S. at 756.  A plea is not rendered unintelligently made simply because, long after the plea was entered, the defendant realizes her cost-benefit analysis as to whether to go to trial or to plead guilty did not correctly take into account every relevant factor which entered into her decision.  Id. at 756-57.

Where a habeas petitioner collaterally attacks his plea by arguing that counsel was ineffective in advising petitioner to plead guilty, the petitioner must show not only that his counsel's performance was deficient, she must also show that he was prejudiced by counsel's substandard advice.  Hill v.

Lockhart, 474 U.S. 52, 58-59 (1985) (quoting Strickland v. Washington, 466 U.S. 668 (1984)).  In the context of a guilty plea, for a habeas petitioner to demonstrate prejudice under Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

Where the allegation of ineffectiveness centers on a "failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the [petitioner] by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led  counsel to change his recommendation as to the plea." Id. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." Id. "[T]hese predictions of the outcome at a possible trial, where necessary, should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.' " Id. (quoting Strickland, 466 U.S. at 695).

Here, two courts—the district court and the Eighth Circuit—have already examined Ms. Broecker's change of plea and determined that she made a voluntary, intelligent and knowing decision to plead guilty.  This court agrees with those assessments.

When Ms. Broecker made her initial appearance in this matter she was advised the mandatory minimum penalty upon conviction was 20 years' imprisonment.  CR Docket No. 147 at pp. 18-19.  The district court informed Ms. Broecker before she entered her guilty plea that the mandatory minimum

sentence applicable to the charge was 20 years.  CR Docket No. 96 at p. 8.  The prosecutor stated in open court at the change of plea hearing that she would be seeking a 20-year sentence in Ms. Broecker's case.  Id. at p. 18.

The written plea agreement also contained a recitation of the 20-year mandatory minimum sentence.  CR Docket No. 51 at p. 2, ¶ C.  Ms. Broecker testified, under oath, that she had gone over the terms of the written plea agreement twice:  once with Mr. Beaumont and once with Mr. Ramstad.  CR Docket No. 96 at p. 5.

Mr. Ramstad surely did not mislead Ms. Broecker as to the sentence she might receive as he stated in open court on the record at the plea hearing that Ms. Broecker was "going to be sentenced to a very lengthy term of incarceration, regardless of how this comes out."  Id. at p. 17.  Ms. Broecker knew at the time she entered her guilty plea that the mandatory minimum sentence she would receive was 20 years' imprisonment, even if Mr. Beaumont told her something else.  Mr. Ramstad, the prosecutor, the district court, and the written plea agreement all told Ms. Broecker she faced a mandatory minimum term of 20 years' imprisonment.

At the change of plea hearing the district court also informed Ms. Broecker it was the government's burden to prove, beyond a reasonable doubt, that the heroin she provided to K.P. was the but-for cause of K.P.'s death.  Id. at p. 12.  Knowing this, *and also knowing her attorney had not hired a toxicologist to contradict Dr. Snell's opinion*, Ms. Broecker chose to plead

guilty.  Id. at p. 14.  She also affirmed that the statement in her factual basis statement was true regarding the but-for cause of K.P.'s death.  Id. at p. 12.

Finally, knowing her attorney had not hired a toxicologist, Ms. Broecker stated she was "absolutely" fully satisfied with both her lawyers.  Id. at p. 5.

Accordingly, Ms. Broecker's claim that Mr. Beaumont was ineffective for failing to hire a toxicologist and for misinforming her of the likely sentence she would receive are precluded because both of those alleged acts of malfeasance occurred before her entry of a valid plea.

### c.     Merits of Failure to Hire a Toxicologist

Even if the court were to consider the merits of Ms. Broecker's allegation that counsel was ineffective for failing to hire a toxicologist, the court would reject that claim.

A habeas petitioner asserting counsel was ineffective for failing to call an expert must point to specific expert testimony or opinions which would have been rendered and had the potential to change the outcome of her trial.  See Ashker v. Class, 152 F.3d 863, 876 (8th Cir. 1998) (finding no prejudice where defendant "made no showing that the relevant tests by an expert witness would have exculpated him"); Ellefson v. Hopkins, 5 F.3d 1149, 1150-51 (8th Cir. 1993) (per curiam) (trial counsel's strategy to forgo calling expert and rely on cross-examination of prosecution expert deemed not ineffective assistance of counsel).  See also Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (petitioner failed to show ineffective assistance because he did not demonstrate how his case was prejudiced by not retaining an expert; "[petitioner] offered no

evidence that an . . .expert would have testified on his behalf at trial.  He merely speculates that such an expert could be found.  Such speculation, however, is insufficient to establish prejudice . . . speculating as to what [an] expert would say is not enough to establish prejudice.") (citation omitted).

Mr. Beaumont's affidavit submitted in this § 2255 motion indicates he *did* consult with experts regarding the cause of K.P.'s death.  Docket No. 21 at pp. 2-3, ¶ 6.  Specifically, Dr. William Swann, a board certified physician in Internal Medicine and a Diplomat in Emergency Medicine, and Dr. Jeffrey P. Walterscheid, Chief Toxicologist with the Armed Forces Medical Examiner System at Dover Air Force Base, were contacted and neither was able to contravene Dr. Snell's opinion that Ms. Broecker's heroin was the cause of K.P.'s death.  Id.  See also Docket No. 21 at pp. 7-17 (email string with Drs. Swann and Walterscheid).  These contacts between Mr. Beaumont and the two experts took place in early summer 2018.  Id.

Later, in the fall of 2018, Ms. Broecker's mother contacted Mr. Beaumont and asked him about hiring a medical examiner from the Cook County Medical Examiner's office regarding the fentanyl issue.  Id. at p. 4, ¶ 12.  Mr. Beaumont contacted this person and she agreed to look at K.P.'s medical records.  Id. at p. 4, ¶ 13.  After sending K.P.'s medical records, Mr. Beaumont called this medical examiner numerous times, but she never once returned any of his phone calls.  Id. at p. 4, ¶ 15.

Ultimately, Mr. Beaumont explained to Ms. Boecker's mother that, even if the medical examiner issued an opinion different from the two experts

Mr. Beaumont originally consulted, the jury would be free to credit Dr. Snell's opinion and to disregard the defense's expert's opinion.  Id. at p. 5, ¶ 16.  The government's evidence was strong:  they had photos of Ms. Broecker mailing the heroin, her note to K.P. that the substance was dangerous and should be used with care, and Dr. Snell's opinion.  Id.  It was Mr. Beaumont's opinion that Ms. Broecker would likely be convicted at trial.  Id.

As for Mr. Ramstad, the exhibits he submitted to the court in support of Ms. Broecker's motion to withdraw her plea reveal he was in communication with three specific experts in toxicology:  Dr. Brad Randall, Dr. Julie Pearson, and Dr. Eugene Schwilke.  CR Docket Nos. 72 & 76-5.  Yet none of these experts ever submitted an affidavit or testified at the evidentiary hearing or at sentencing in the direct criminal proceedings.  No expert's affidavit has been submitted in this § 2255 motion either.

Ms. Broecker attacks Mr. Beaumont's affidavit by arguing the experts he consulted did not have the benefit of the later lab reports Mr. Ramstad obtained after Ms. Broecker plead guilty showing furanylfentanyl in K.P.'s blood.  Docket No. 27 at pp. 10-11.  But Ms. Broecker and her counsel have been in possession of those subsequent lab reports since May 2019 and, to date, no specific expert has been identified who would opine that the heroin Ms. Brocker gave K.P. was not the but-for cause of K.P.'s death.

Mr. Ramstad suggests in his affidavit the toxicology expert evidence could have been used as mitigation evidence at sentencing.  Docket No. 14 at p. 7, ¶ 22.  Yet Mr. Ramstad himself was in possession of the later lab reports

in May (CR Docket Nos. 83 & 84), consulted with three expert toxicologists himself after receiving those lab reports (Docket No. 14 at p. 5, ¶ 17; CR Docket 76-5), and yet he never presented toxicology evidence in mitigation at sentencing even though sentencing took place over four months after Mr. Ramstad had the relevant, supposedly mitigating, lab reports.  CR Docket No. 153 at pp. 13-17.

Without a specific statement of an expert as to the opinion that would have been rendered at trial had Mr. Beaumont hired an expert, this claim fails on the merits.  <u>Ashker</u>, 152 F.3d at 876; <u>Ellefson</u>, 5 F.3d at 1150-51; <u>Wildman</u>, 261 F.3d at 839.  The court recommends dismissing this part of claim one without holding an evidentiary hearing.

### d.    Merits of Misinformation as to Likely Sentence

Ms. Broecker states that Mr. Beaumont told her she would likely receive a sentence of probation or less than one year.  Docket No. 10 at p. 15.  Though in earlier testimony she stated she understood that she would be sentenced to 20 years' imprisonment at the time of her sentencing hearing. CR Docket No. 147 at pp. 27-28.

Mr. Beaumont stridently denies he ever told Ms. Broecker she would receive probation or less than one year.  Docket No. 21.  He states he explained the mandatory minimum carefully to Ms. Broecker.  <u>Id.</u> at pp. 1-2, ¶ 4. Notably, Ms. Broecker stated under oath that Mr. Ramstad advised her of the mandatory minimum sentence before she plead guilty.  CR Docket No. 58-1 at ¶ 11.  Nevertheless, despite these contrasting stories of what discussion took

place, no evidentiary hearing is needed to make a credibility determination as between Ms. Broecker's assertions and Mr. Beaumont's.

Under existing Eighth Circuit precedent, a plea is valid and binding if **the court** advises the defendant prior to entry of a guilty plea of what the statutory range of punishment is and tells the defendant the USSG will be applied. United States v. Ramirez-Hernandez, 449 F.3d 824, 826 (8th Cir. 2006). "This is true even where the [defendant's] misunderstanding is caused by defense counsel's erroneous estimation of what the ultimate sentence will be." Id.

A defendant cannot show Strickland prejudice from an attorney's erroneous estimate of her sentence if the district court cured the attorney's error by informing the defendant of her accurate sentencing exposure. United States v. Norvell, 729 F.3d 788, 795 (8th Cir. 2013) (no ineffective assistance where attorney misadvised defendant of potential sentence, but district court correctly advised defendant of potential sentence at change of plea hearing); United States v. Nesgoda, 559 F.3d 867, 870 n.2 (8th Cir. 2009) (stating that "[c]ounsel's incorrect estimate of sentencing range was not ineffective assistance of counsel."); Matthews v. United States, 114 F.3d 112, 114 (8th Cir. 1997); Thomas v. United States, 27 F.3d 321, 326 (8th Cir. 1994). The district court at the change of plea hearing addressed the mandatory minimum sentence stating, "[t]here's a mandatory minimum period of prison of not less than 20 years, and a possible maximum penalty of not more than life. . . . Do you understand that those are the mandatory minimum and the possible maximum penalties you face if you plead guilty today?" Docket No. 96 p. 8. To

29

which Ms. Broecker replied, "Yes, Your Honor." Id. at p. 9.  Regardless of what counsel told Ms. Broecker, the district court cured any possible misinformation regarding the penalties.

Even if Ms. Broecker were able to establish deficient performance in light of the district court's correct advisement to her of the potential penalties, she cannot establish prejudice.  As stated above, Ms. Broecker has failed to establish there was any expert willing to give an opinion that the result of K.P.'s death was from something other than the heroin Ms. Broecker sold K.P.  Ms. Broecker never disputed that she sold K.P. the heroin or that K.P. ingested the same heroin.  See, e.g., CR Docket No. 58-1 at pp. 1-2, ¶¶ 5 & 7 (admitting she sent heroin to K.P. and that K.P. had heroin in his blood at his death).

Given Ms. Broecker's admissions and her failure to adduce any expert opinion contrary to Dr. Snell's opinion, there is no reasonable possibility that a trial—had Ms. Broecker not pleaded guilty and availed herself of a trial—would have resulted in any different outcome regarding her sentence.  A mandatory minimum of 20 years would have been applied after the inevitable conviction at trial.  Ms. Broecker has not shown that there is any possibility she would be better off had counsel not misinformed her of the likely sentence she would receive.

This magistrate judge respectfully recommends granting the government's motion to dismiss Ms. Broecker's claim one.  Her plea is valid and binding, so pre-plea claims of ineffective assistance of counsel are

precluded.  Even on the merits, those claims fail because Ms. Broecker has

failed to establish both prongs of <u>Strickland</u> as to both allegations.

### 3.    Claim Two—Conflict of Interest

Ms. Broecker's second claim is that Mr. Ramstad rendered ineffective

assistance of counsel by continuing to represent her after she determined to

attempt to withdraw her plea.  She claims that by moving to withdraw her plea,

she made Mr. Ramstad a necessary witness and, thereby, created a conflict

of interest.

Vague and conclusory allegations of ineffective assistance which are

grounded upon an alleged conflict of interest are insufficient to warrant an

evidentiary hearing on a § 2255 motion.  <u>Kindle v. United States</u>, 46 F.3d 1136

(8th Cir. 1995) (table).  The petitioner must allege specific facts tending to prove

an actual conflict of interest; conclusory allegations will not suffice.  <u>Id.</u>  And

when a petitioner fails to assert counsel's conflict of interest *before* trial, in

order to prevail on such a claim on a § 2255 petition, he must show an actual

conflict of interest that affected the adequacy of his representation.  <u>Noe v.</u>

<u>United States</u>, 601 F.3d 784, 789 (8th Cir. 2010) (citing <u>Cuyler v. Sullivan</u>, 446

U.S. 335, 348-49 (1980)).

An actual conflict, for purposes of the Sixth Amendment, is a "conflict of

interest that adversely affects counsel's performance."  <u>Noe</u>, 601 F.3d at 790

(citing <u>Mickens v. Taylor</u>, 535 U.S. 162, 172, n. 5 (2002)).  "The effect must be

actual and demonstrable, causing the attorney to engage or not to engage in

particular conduct."  <u>Noe</u>, 601 F.3d at 790 (citing <u>Covey v. United States</u>, 377

31

F.3d 903, 908 (8th Cir. 2004)).  To make this showing, the § 2255 petitioner must identify an alternative defense strategy the attorney might have pursued, show that such strategy was objectively reasonable, and establish that counsel's failure to pursue the alternative strategy was attributable to the actual conflict.  Noe, 601 F.3d at 790 (citing Winfield v. Roper, 460 F.3d 1026, 1039 (8th Cir. 2006)) (other citations omitted).  The established two-prong test under Strickland must be satisfied.  Noe, 601 F.3d at 791 (quoting Strickland, 466 U.S. at 688).

In this case, Mr. Ramstad has submitted an affidavit indicating if he had not continued to represent Ms. Broecker after she decided she wanted to move to withdraw his plea, he could have testified at the evidentiary hearing on that motion.  Docket No. 14 at pp. 5-6, ¶ 19; p. 6, ¶ 22.  He would have testified that Mr. Beaumont rendered ineffective assistance of counsel to Ms. Broecker by not hiring a toxicology expert.  Id. at p. 5, ¶17; p. 6, ¶ 22.  He would have testified he learned some days before the written plea agreement was filed that Mr. Beaumont was not going to come to South Dakota to attend the change of plea hearing.  Id. at pp. 2-3, ¶ 4.  He stated that once he learned this, he telephoned Ms. Broecker and went over the plea agreement documents with her on the phone.  Id. at pp. 2-3, ¶ 11.  On the day of the change of plea hearing, he met with Ms. Broecker and her family in Mr. Ramstad's office prior to the hearing.  Id. at p. 3, ¶ 12.  They all discussed the fact that there was no toxicology expert report obtained.  Id.  Ms. Broecker stated she wished to go forward with the change of plea hearing anyway.  Id.  Mr. Ramstad states he

32

should have moved to continue the hearing.  Id.  Mr. Ramstad states that he did consult with a toxicologist.  Id. at p. 5, ¶ 17.  He states that the toxicologist's report could have been used as mitigating evidence at sentencing. Id. at p. 7, ¶ 22.  But, as noted above, no expert report has ever materialized in this court's record—either then or now.

The court finds that, if a conflict of interest was present, Ms. Broecker waived it.  She signed a waiver of attorney-client privilege as to both Mr. Ramstad and Mr. Beaumont, yet elected to continue having Mr. Ramstad represent her.  CR Docket No. 95.  Even if there was not a waiver of the conflict, Ms. Broecker has not carried her burden.

Mr. Ramstad asserts in his affidavit filed in this § 2255 motion that if he had not continued representing Ms. Broecker, he would have been free to assert that Mr. Beaumont rendered ineffective assistance of counsel to Ms. Broecker by not hiring a toxicologist.  Docket No. 10 at pp. 5-6, ¶ 19; p. 6, ¶ 22.  However, he *did* assert Mr. Beaumont rendered ineffective assistance of counsel while continuing to represent Ms. Broecker.  CR Docket No. 88 at p. 8, point 2; CR Docket No. 99-5; CR Docket No. 111.

Mr. Ramstad states in his affidavit that, had he testified at the evidentiary hearing, he would have explained he met at his office in person with Ms. Broecker and her family prior to the change of plea hearing and discussed the fact that Mr. Beaumont had not hired a toxicologist.  This evidence would have harmed, not helped, Ms. Broecker as this foreknowledge by her was relied upon by the district court in denying the motion to withdraw

the plea.  In any case, Ms. Broecker herself testified she knew no toxicologist had been hired when she entered her plea, so the testimony of Mr. Ramstad would have been merely cumulative.

Mr. Ramstad states in his affidavit he could have explained the circumstances which caused the delay in moving to withdraw Ms. Broecker's plea of guilty—obtaining the lab reports and then consulting with experts.  But he did explain that he took these actions in detail at multiple points in the record.  CR Docket Nos. 72, 88, 111, 99.

There is no Strickland prejudice where the evidence that purportedly could not be presented due to the conflict of interest was merely cumulative of other evidence in the record.  Bucklew v. Luebbers, 436 F.3d 1010, 1020 (8th Cir. 2006) (no Strickland prejudice where uncalled witnesses' testimony would merely have been cumulative of other evidence already before the jury).  Here, Mr. Ramstad's assertions that Mr. Beaumont was ineffective and that he had good reasons for the delay between Ms. Broecker's plea and his motion to withdraw her plea would merely duplicate information that was *already* in the record.  The court finds no prejudice as to these factual matters.

Finally, Mr. Ramstad states in his affidavit that, but for the conflict of interest, he could have hired a toxicologist and presented that expert's opinion at Ms. Broecker's sentencing hearing.  Docket No. 14 at p. 7, ¶ 22.  But the record reveals that Mr. Ramstad *did* consult with no fewer than three experts: Dr. Eugene Schwilke (CR Docket No. 76-5; CR Docket No. 82), former Minnehaha County Coroner, Dr. Brad Randall (CR Docket No. 99-7 at p. 2),

and Dr. Julia Pearson, Chief Forensic Toxicologist at Hillsborough County Medical Examiner's Office of Tampa/St. Petersburg, Florida (CR Docket No. 99-7).

These experts were identified and contacted in April and May 2019.  Id. (affidavit signed April 8, 2019, identifying Drs. Randall and Pearson as potential experts); CR Docket No. 76-5 at p. 1 (letter dated May 15, 2019, identifying Dr. Schwilke as a potential expert).  Yet no expert opinion was ever presented—in support of the motion to withdraw the plea filed in July 2019, at the sentencing hearing in October 2019, or during this § 2255 motion filed three years later.

The claim that Mr. Ramstad was hindered in his presentation of an expert toxicology opinion—like the claim that Mr. Beaumont was ineffective for failing to investigate hiring a toxicologist—lacks support.  Nothing about Mr. Ramstad's alleged conflict of interest prevented him from hiring an expert. He consulted with at least three different experts.  If any one of them had given him an opinion that would have exonerated or mitigated Ms. Broecker's culpability, there was nothing that would have prevented Mr. Ramstad from presenting that evidence.  The fact that no such evidence was ever forthcoming is not due to any conflict of interest.  The court assumes that no such evidence was ever presented because no expert could be located that would give a favorable opinion.  The court recommends that this claim be dismissed without holding an evidentiary hearing.

C.   **Brady** Claim

Ms. Broecker's final claim for relief under § 2255 is that the government violated her Due Process rights under the Fifth Amendment by not disclosing the detailed toxicology reports from Axis and Sanford which Mr. Ramstad obtained via subpoena after Ms. Broecker's plea.

"The Due Process Clause of the Fifth Amendment requires the government to disclose to the accused favorable evidence that is material to guilt or punishment and not otherwise available to the defendant." See United States v. Santisteban, 501 F.3d 873, 877 (8th Cir. 2007) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963); United States v. Bagley, 473 U.S. 667, 678 (1985)). "To prove a violation, the defendant must show that the evidence was both favorable and material, and that the government suppressed the evidence." Santisteban, 501 F.3d at 877 (citing United States v. Barraza-Cazares, 465 F.3d 327, 333 (8th Cir. 2006)). "The government has suppressed evidence when it was otherwise unavailable to the defendant, and the prosecution failed to disclose the evidence in time for the defendant to use it." Santisteban, 501 F.3d at 877 (citing Barraza-Cazares, 465 F.3d at 334). Thus, "[t]he government does not suppress evidence in violation of Brady by failing to disclose evidence to which the defendant had access through other channels." Santisteban, 501 F.3d at 877 (quoting United States v. Zuazo, 243 F.3d 428, 431 (8th Cir. 2001)).

When the prosecution fails to disclose Brady evidence, it is "material" only if the evidence, had it been disclosed, "could reasonably be taken to put

the whole case in such a different light as to undermine confidence in the verdict." Robinson, 809 F.3d at 997. The question is whether, despite the evidence, the defendant still received a fair trial that resulted in "a verdict worthy of confidence." Id.

Evidence is material where "there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. "A 'reasonable probability of a different result" is one in which the [withheld] evidence "undermines confidence in the outcome of the trial.' " See Turner v. United States, ___ U.S. ___, 137 S. Ct. 1885, 1893 (2017). See also Smith v. Cain, 565 U.S. 73, 75 (2012); Cone v. Bell, 556 U.S. 449, 469-70 (2009). To determine whether the outcome is undermined, the court evaluates the withheld evidence in the context of the entire record. Turner, 137 S. Ct. at 1893.

Here, Ms. Broecker's Brady claim fails on all counts. First, she has failed to show that the lab reports were otherwise unavailable to her. As evidenced by Mr. Ramstad's successful motion for a subpoena *duces tecum* to the labs, the information was readily available to Ms. Broecker at any point in the litigation by the mere expedient of seeking a subpoena *duces tecum*.

Second, she fails to show that the lab reports were material—that is, that they had a reasonable probability of affecting the outcome of the case sufficient to undermine confidence in the outcome. Again, this conclusion circles back to the fact that never at any point in this litiation, either at the initial direct criminal proceedings or during this § 2255 proceeding, has Ms. Broecker

37

produced an expert report or identified an expert and stated with specificity what that expert's testimony would be.  Without such testimony, Ms. Broecker cannot show that the untimely discovery of the lab reports affected her case in any way.

The government argues that Ms. Broecker's <u>Brady</u> claim is procedurally defaulted because she did not raise the issue in her direct appeal.  But, as is evident from the Eighth Circuit's opinion, had she raised the issue, the court would have determined that the appeal waiver in her plea agreement prevented the court from reaching that issue.  <u>Cf.</u> <u>Broecker</u>, 840 Fed. Appx. at 50.  Because the <u>Brady</u> issue fails on the merits, the court chooses to dispense with the issue on the merits rather than determine whether a defendant can be faulted for failing to raise an issue on appeal that they had given up the right to raise—especially when the waiver does not include issues that might be raised in a collateral attack such as this proceeding.

## D.    No Evidentiary Hearing is Warranted

"While '[a] petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and the records of the case conclusively show that [she] is entitled to no relief,' no hearing is required 'where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based.' " <u>New v. United States</u>, 652 F.3d 949, 954 (8th Cir. 2011) (quoting <u>Anjulo-Lopez v. United States</u>, 541 F.3d 814, 817 (8th Cir. 2008)).

"A district court may deny an evidentiary hearing where (1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) 'the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.' " Guzman-Ortiz v. United States, 849 F.3d 708, 715 (8th Cir. 2017) (quoting United States v.Sellner, 773 F.3d 927, 929-30 (8th Cir. 2014)).  The Eighth Circuit held no evidentiary hearing was necessary in the Guzman-Ortiz case because Guzman-Ortiz mischaracterized the record in his challenges to his lawyer's representation during closing argument and sentencing.  Guzman-Ortiz, 849 F.3d at 715.  Therefore, "no further factual development of the record was necessary" before denying those claims.  Id.

The district court's denial of an evidentiary hearing in Adams v. United States, 869 F.3d 633 (8th Cir. 2017), was also affirmed.  Adams claimed his lawyer just told him to answer all the district court's questions at the plea hearing "yes."  Id. at 635.  Adams said he did not understand the plea documents or the plea proceeding, his lawyer never explained them to him, he only signed the documents because his lawyer told him to, said his lawyer blindly urged him to plead guilty and to answer all the judge's questions at the plea hearing by saying "yes."  Id.  Adams' lawyers submitted affidavits that backed up the record, but were inconsistent with Adams' affidavit submitted in his § 2255 motion.  Id.  The district court denied the § 2255 motion without a hearing.  Id. at 634.

The Eighth Circuit said Adams' contention that his lawyer said to answer all the judge's questions "yes" was belied by the transcript of the plea hearing where he answered multiple questions "no." Id. at 635. Since he chose between "yes" and "no" answers when answering the court's questions, the court was permitted to hold Adams to his sworn testimony at the plea hearing that he had read the plea documents, that they were accurate, that he had discussed them with counsel, and that he understood them. Id.

This case is controlled by Adams. Ms. Broecker's current assertions are not just contradicted by her lawyers' affidavits. She is contradicted by *her own* testimony, both at her change of plea hearing, and at the later evidentiary hearing on the motion to withdraw her plea. Although in her § 2255 motion she argues Mr. Beaumont told her she would receive a sentence of probation or less than a year, at the evidentiary hearing she admitted he told her she would receive a sentence of 20 years at her sentencing hearing, subject to a later motion to reduce her sentence from the government if she provided substantial assistance.

Her claims that counsel labored under a conflict of interest and that counsel was ineffective for failing to hire an expert are belied by the record and lack merit under existing Eighth Circuit precedent. Her Brady claim fails as a matter of law. For these reasons, this magistrate judge recommends that an evidentiary hearing not be held in this matter.

## CONCLUSION

Based on the foregoing facts, law, and analysis, this magistrate judge respectfully recommends granting the government's motion to dismiss [Docket No. 23], and dismissing Ms. Broecker's § 2255 motion without holding an evidentiary hearing.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require *de novo* review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED January 12, 2023.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge

41