UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| STEPHANIE BROECKER,<br><br>                    Movant,<br><br>        vs.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | 4:22-CV-04089-KES<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING § 2255 MOTION WITHOUT AN EVIDENTIARY HEARING |

Movant, Stephanie Broecker, filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 alleging ineffective assistance of counsel and that the government failed to timely disclose material exculpatory evidence. Docket 1.[1] The United States moved to dismiss the motion without holding an evidentiary hearing. Docket 23. Broecker, through counsel, replied to the government's motion to dismiss, arguing to either vacate her conviction or, at least, hold an evidentiary hearing. Docket 27 at 19. Magistrate Judge Veronica L. Duffy issued a report and recommended that the court grant the government's motion to dismiss without holding an evidentiary hearing. Docket 28 at 41. Broecker timely filed objections to the report and recommendation. Docket 32. The government did not object to the report and recommendation. Docket 30.

---

[1] The court will cite to documents from this § 2255 file using the case's assigned docket number. Documents from Broecker's underlying criminal case, *United States v. Broecker*, 4:18-CR-40027-KES (D.S.D.), will be cited using the case's assigned docket number preceded by "CR."

## FACTS

The court recounts the facts here as they are relevant to Broecker's objections. Magistrate Judge Duffy provides a more complete summary of the factual and procedural background to this case in her report and recommendation. *See* Docket 28 at 1-14.

Stephanie Broecker was arrested in the Northern District of Illinois on a South Dakota charge of distributing a controlled substance resulting in the death of K.P. *See* 21 U.S.C. § 841(a)(1). Broecker mailed heroin to K.P., who then ingested the heroin and died of an overdose. CR Docket 52 at 1. Inside the package was heroin and a note that warned K.P. to be careful and not to use the drug alone. CR Docket 66 ¶¶ 7-8; CR Docket 107 at 1-2. During her arraignment in Chicago, Broecker was advised that if she was convicted of the charge, she faced a 20-year mandatory minimum sentence of incarceration. CR Docket 147 at 18-19. Broecker was then transported to the District of South Dakota where Broecker made her initial appearance. CR Docket 12. She retained attorneys Rick L. Ramstad and Lawrence S. Beaumont (pro hac vice) as co-counsel. CR Docket 31; CR Docket 36.

Broecker eventually signed a written plea agreement explicitly stating that the charge in the indictment carried a 20-year mandatory minimum sentence of incarceration and a maximum sentence of life imprisonment. CR Docket 51 ¶ C. In her plea agreement, Broecker waived her right to appeal except any jurisdictional issues or any sentence above the advisory guideline range because of an upward departure or upward variance. *Id.* ¶ N. The factual

basis statement provided in part that "Minnehaha County Coroner Dr. Kenneth Snell determined that [K.P.'s] cause of death was heroin toxicity, and that but for the use of the heroin [Broecker] sent [K.P.], he would not have died." CR Docket 52.

Broecker appeared with Ramstad at the change of plea hearing four days after she signed the plea agreement. CR Docket 96 at 2. Broecker admitted, under oath, that she had read and discussed the plea agreement twice—once with Beaumont and once with Ramstad—before signing it. *Id.* at 5-6. She testified that she understood the terms in the agreement and that no promises or threats had been made to persuade her into accepting the plea. *Id.* at 6. The court explained that if Broecker pleaded guilty, she would be subject to "a mandatory minimum period of prison of not less than 20 years, and a possible maximum penalty of not more than life." *Id.* at 8. Broecker affirmed that she understood. *Id.* The court found that Broecker was fully competent and capable of entering a guilty plea, was aware of the nature of the charges and consequences of the guilty plea, and entered the guilty plea knowingly and voluntarily. *Id.* at 14.

While attempting to keep Broecker out of custody until sentencing, Ramstad stated to the court that Broecker was "going to be sentenced to a very lengthy term of incarceration, regardless of how this comes out." *Id.* at 17. The court explained that detention was mandatory unless the government planned to recommend a sentence of no jail time. *Id.* at 18. In response, the prosecutor stated that she would be recommending the court impose the mandatory

3

minimum 20-year sentence. *Id.* The court ordered Broecker be taken into custody. *Id.* at 19.

Two months after she pleaded guilty, a draft presentence report (PSR) was filed and stated that the mandatory minimum sentence Broecker faced was 20 years' incarceration. CR Docket 57 at 15. Two weeks later, Broecker moved to discharge Beaumont as her attorney and asked to have Ramstad appointed as court-appointed counsel. CR Docket 58. This motion was made, in part, because Broecker's family was in contact with a potential expert, Dr. Anthony Scalzo, who stated that K.P.'s death "was due to multiple toxicants including fentanyl." CR Docket 88-1 at 34. The court granted Broecker's motion and appointed Ramstad to represent Broecker. CR Docket 62. The final PSR was filed about one month later. CR Docket 66.

A week after the final PSR was filed, Ramstad moved to continue Broecker's sentencing date, arguing that he needed more time to consult with experts to potentially refute Dr. Snell's conclusion that Broecker's heroin was the actual cause of K.P.'s death.[2] CR Docket 70; CR Docket 72. Six weeks later, Ramstad moved the court to obtain a subpoena *duces tecum* for Axis Forensic Toxicology and Sanford Health Pathology Clinic to produce K.P.'s toxicology records. CR Docket 76. The reason for the motion, Ramstad explained, was that he was consulting another potential expert concerning the testing and

---

[2] Ramstad states that he consulted with: (1) Dr. Brad Randall, former Minnehaha County Coroner; (2) Dr. Julia Pearson, Chief Forensic Toxicologist at Hillsborough County Medical Examiner's Office of Tampa/St. Petersburg, Florida; and (3) Dr. Eugene Schwilke. CR Docket 72 at 2-3; CR Docket 82 at 2.

data that formed the basis of Dr. Snell's opinion that K.P. died of a heroin overdose. CR Docket 76-5. The court granted the motion for the subpoenas. CR Docket 77.

Two months after issuing the subpoenas, and seven months after she pleaded guilty, Broecker moved to withdraw her plea, CR Docket 85, arguing that Beaumont's representation was ineffective because he failed to thoroughly investigate whether the heroin Broecker sent was actually the cause of K.P.'s death, *see* CR Docket 88 at 8. Broecker alleged that Beaumont misled her "as to his investigation into defenses raised by examination of the toxicological evidence." *Id.* Broecker attached several exhibits to her motion, but none provided any evidence of an expert opinion or report stating that K.P. did not die from ingesting Broecker's heroin.[3] CR Docket 88-1. Ramstad then filed an affidavit reiterating what Broecker already alleged—that Beaumont had rendered constitutionally ineffective assistance of counsel by failing "to consult with the appropriate experts to explore possible defenses" that could rebut Dr. Snell's opinion that K.P. died from heroin toxicity. CR Docket 102-4 ¶ 12. Broecker's motion to withdraw her plea was ultimately denied.[4] CR Docket 119.

---

[3] Similarly, Broecker did not offer testimony from an expert during the evidentiary hearing held on Broecker's motion to withdraw her plea to show that K.P. did not die from ingesting Broecker's heroin. *See* CR Docket 147. Broecker introduced three exhibits, but none consisted of an expert opinion as to K.P.'s death. CR Docket 118. Moreover, no expert testified as to the cause-in-fact of K.P.'s death. *See* CR Docket 147. Neither Ramstad nor Beaumont testified at the hearing. *Id.*

[4] The court held that an ineffective assistance of counsel claim is not a "fair and just" reason for withdrawing a guilty plea when that claim "directly contradicts statements [a defendant] made under oath at [her] guilty plea

Broecker was sentenced to the mandatory minimum sentence of 20 years in custody. CR Docket 127 at 2. At the sentencing hearing, Ramstad did not provide any mitigating expert testimony or an expert opinion as to whether Broecker's heroin was the actual cause of K.P.'s death. *See* CR Docket 154.

Broecker appealed, arguing that the district court should have allowed her to withdraw her plea. *United States v. Broecker*, 840 F. App'x 49, 50 (8th Cir. 2021) (per curiam). The Eighth Circuit affirmed the district court's decision and held that Broecker's motion to withdraw her plea was untimely and that her arguments were contradicted by the record. *Id.* The court also held that, at the change of plea hearing, the record made clear that Broecker was informed of the mandatory minimum sentence. *Id.*

On July 7, 2022, Broecker timely filed this § 2255 motion.[5] Docket 1. Broecker raises three claims for relief:

1. Beaumont was ineffective for failing to thoroughly investigate possible defenses and failing to properly advise her with regard to her potential sentence, violating Broecker's Sixth Amendment right to effective assistance of counsel;

---

hearing . . . that [she] was totally satisfied with [her] attorney's legal assistance." CR Docket 119 at 8 (quoting *United States v. Trevino*, 829 F.3d 668, 672 (8th Cir. 2016)). The court provided multiple reasons denying Broecker's motion. *Id.* at 8-13.

[5] Due to a special pandemic rule in effect at the time, Broecker's judgment became final 150 days after the Eighth Circuit issued its opinion denying her appeal. *See* Order, No. 589, 2020 U.S. Lexis 1643 (Mar. 19, 2020) (allowing 150 days following a circuit court opinion to file a petition for certiorari before the Supreme Court). The Eighth Circuit issued its opinion on March 12, 2021. CR Docket 160. On August 9, 2021 (150 days after the Eighth Circuit's opinion), Broecker's statute of limitations began to run. She filed this § 2255 motion on July 7, 2022, within the one year allowed by § 2255(f). *See* Docket 1.

2. Ramstad had a conflict of interest by continuing to represent Broecker after she discharged Beaumont, violating Broecker's right to effective assistance of counsel; and

3. the government failed to timely produce allegedly exculpatory toxicology records violating Broecker's Fifth Amendment Due Process rights.

Docket 1 at 5, 7.

Magistrate Judge Duffy provided a full, complete, and well-analyzed report and recommendation addressing all of the issues Broecker raised. Docket 28. The magistrate judge recommended this court dismiss all of Broecker's claims without holding an evidentiary hearing. *Id.* at 41. Broecker objects to the magistrate judge's report and recommendation. Docket 32. Broecker argues that her motion should not be dismissed without an evidentiary hearing because "there are a number of contested issues of fact that can only be resolved through an evidentiary hearing." *Id.* at 3.

## STANDARD OF REVIEW

The court's review of a magistrate judge's report and recommendation is governed by 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. The court reviews de novo any objections to the magistrate judge's recommendations as to dispositive matters that are timely made and specific. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). In conducting its de novo review, this court may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *United States v. Craft,* 30 F.3d 1044, 1045 (8th Cir. 1994).

## DISCUSSION

Section 2255 allows a federal prisoner to "vacate, set aside or correct" a federal sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). While § 2255 generally provides relief, its availability is limited to certain circumstances. As the Eighth Circuit noted, "[r]elief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." *Walking Eagle v. United States*, 742 F.3d 1079, 1081-82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)). "The movant bears the burden to prove each ground entitling relief." *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citing *Kress v. United States*, 411 F.2d 16, 20 (8th Cir. 1969) (per curium)).

Section 2255(b) requires an evidentiary hearing "unless the motion and the files and the records of the case conclusively show that [the movant] is entitled to no relief." *Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008) (citation omitted). An evidentiary hearing may be denied if, "(1) accepting the petitioner's allegations as true, the petitioner is not entitled to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of

fact." *Guzman-Ortiz v. United States*, 849 F.3d 708, 715 (8th Cir. 2017) (citation omitted). "If [the court] can determine from the motion and the supporting record in the case that [the defendant] is not entitled to § 2255 relief, then no hearing" is required. *Winters v. United States*, 716 F.3d 1098, 1103 (8th Cir. 2013) (citation omitted); *see also Larson v. United States*, 905 F.2d 218, 221 (8th Cir. 1990) ("There is no requirement that a district court must conduct an evidentiary hearing if the record is sufficient without it.").

## I.    Ineffective Assistance of Trial Counsel

To establish ineffective assistance of counsel within the context of § 2255, a movant faces the "heavy burden" of the two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, "a convicted defendant must prove both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Apfel*, 97 F.3d at 1076.

To show deficient performance, the movant must prove that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "Reasonable performance includes an adequate investigation of the facts, consideration of viable theories, and development of evidence to support those theories." *Cox v. Norris*, 133 F.3d 565, 573 (8th Cir. 1997).

To prove prejudice in cases involving guilty pleas, the movant must establish that "there is a reasonable probability that, but for counsel's errors, [she] would not have pleaded guilty and would have insisted on going to trial." *York v. Lockhart*, 856 F.2d 61, 63 (8th Cir. 1988) (quoting *Hill v. Lockhart*, 474

9

U.S. 52, 59 (1985)). Courts, however, "should not upset a plea simply because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Meza-Lopez v. United States*, 929 F.3d 1041, 1045 (8th Cir. 2019) (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017)). Rather, "[j]udges should . . . look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* (quoting *Lee*, 582 U.S. at 369). "There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." *Hall v. Luebbers*, 296 F.3d 685, 692 (8th Cir. 2002) (citation omitted).

### A.    Claim 1: Failure to Investigate and Misinformation as to Sentence

The magistrate judge recommended that both allegations under claim 1 be dismissed because, under *Tollett v. Henderson*, 411 U.S. 258 (1973), a valid plea precludes collateral attacks on pre-plea matters. Docket 28 at 20. Because "both of th[e] alleged acts of malfeasance occurred before her entry of a valid plea[,]" *id.* at 25, the magistrate judge concluded that Broecker's path towards relief under claim 1 is narrowed to an analysis of whether Broecker's plea entry at the change of plea hearing was knowing and voluntary, *id.* at 21-25. When explaining that it was, the magistrate judge reasoned that "Ms. Broecker knew at the time she entered the guilty plea that the mandatory minimum sentence she would receive was 20 years' imprisonment, even if Mr. Beaumont told her something else." *Id.* at 24.

Broecker objects, arguing that "the 'something else' the Magistrate referred to" was not just an erroneous communication, but instead an "outright lie" and a material misrepresentation by Beaumont concerning Broecker's potential sentence.[6] Docket 32 at 3, 7. Broecker attempts to distinguish her case from the facts in *Adams v. United States*, 869 F.3d 633 (8th Cir. 2017), which was relied on by the magistrate judge, in part, when recommending this court grant the government's motion to dismiss. Docket 32 at 7 n.3. Broecker contends that "*Adams* involved poor advice, not actively misrepresenting the terms of the plea," like Beaumont did here. *Id.*

Even assuming Beaumont made other promises to Broecker concerning her potential sentence, no evidentiary hearing is necessary because her argument fails as a matter of law. A plea is binding "[s]o long as the district court tells a defendant the statutory range of punishment that [s]he faces and informs h[er] that the sentencing guidelines will be used in determining the ultimate sentence." *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006) (citing *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996)). In the Eighth Circuit, "if the defendant understands the possible punishment, it matters not that [s]he says counsel made other promises."

---

[6] According to Broecker, "Mr. Beaumont explained that the plea agreement was 'written cryptically' as a 'go around' for the mandatory minimum." Docket 32 at 3. Broecker states that Beaumont told her that she "was likely to receive only one year imprisonment or probation through getting the results stricken so that she ultimately would be convicted of simple distribution." *Id.* Broecker contends that "these statements deserve greater weight and emphasis than what they appeared to receive in the recommendation." *Id.* at 3-4.

*United States v. Haubrich*, 744 F.3d 554, 557 (8th Cir. 2014) (citing *United States v. Peebles*, 80 F.3d 278, 279 (8th Cir. 1996)).

Broecker, who pleaded guilty and received a 240-month sentence, claims that Beaumont said she would only receive one year in custody or probation. Docket 32 at 3. The plea agreement contained no such terms, CR Docket 51, and Broecker acknowledged the mandatory minimum punishment she faced at the change of plea hearing. CR Docket 97 at 6 (Broecker asserting she understood the plea agreement and that she discussed the terms of the plea agreement twice—once with Beaumont and once with Ramstad); *id.* at 7-8 (the court explaining the mandatory minimum sentence to Broecker). Despite any advice from Beaumont about the ultimate length of her sentence, the record supports the conclusion that Broecker understood her possible punishment and that her plea was knowing and voluntary.[7] *See Haubrich*, 744 F.3d at 557.

---

[7] Broecker also argues that the government's expert, Dr. Snell, did not know "there was in fact fentanyl present in [K.P.'s] blood because he incorrectly relied on the summary toxicology report stating that there was no fentanyl present in [K.P.'s] blood." Docket 32 at 6. Broecker asserts that "[t]he importance and significance of the signals of fentanyl in K.P.'s blood cannot be properly disputed absent" an evidentiary hearing. *Id.* Although not framed as an objection, Broecker's argument does not provide a basis to hold an evidentiary hearing because, even if true, her argument does not affect the voluntariness of her guilty plea. *See* Docket 28 at 20-25 (detailing why Broecker's plea was knowing and voluntary). And on the merits, even if true, Broecker's allegations do not prove Beaumont's performance was deficient because Broecker learned only later, after her plea entry, that new evidence revealed fentanyl or fentanyl analogs were present in K.P.'s blood. Docket 10 at 14. This is not enough to rebut the reasonable strategic conclusion Beaumont made when he recommended Broecker accept the plea agreement. *See* Docket 28 at 26-28 (detailing how Beaumont consulted with the relevant experts and informed Broecker of this consultation).

Thus, no evidentiary hearing is needed because, even assuming Beaumont's allegations are true, Broecker is not entitled to relief. Broecker's objection is overruled.

Broecker also objects to the magistrate judge's finding that Ramstad "surely did not mislead Ms. Broecker" when Ramstad said at the change of plea hearing that Broecker was "going to be sentenced to a very lengthy term of incarceration, regardless of how this comes out." Docket 32 at 3. Broecker claims that Ramstad misled her and "certified his own ineffectiveness, as well as that of Mr. Beaumont[,]" by admitting in his affidavit that "he should have requested a continuance" and that "he [Ramstad] did not look into the fundamental substantive issues of the case until well after the change of plea hearing." *Id.* Broecker contends that these points were not addressed in the magistrate judge's recommendation. *Id.*

But the magistrate judge thoroughly addressed the statements Ramstad made in his affidavit. *See* Docket 28 at 32-35. Moreover, Broecker is not entitled to an evidentiary hearing because Broecker's plea was knowing and voluntary even if Ramstad unintentionally misled her at the change of plea hearing. Broecker was advised of the mandatory minimum sentence she faced at her initial appearance, *see* CR Docket 147 at 18-19, and change of plea hearing, CR Docket 96 at 8. At the change of plea hearing, Broecker testified, under oath, that there were no threats or promises made to persuade her to accept the plea agreement. *Id.* at 6. Broecker further stated that she had gone over the terms of the written plea agreement twice—once with Beaumont and

13

once with Ramstad—while knowing that Beaumont reasonably tried but could not identify any experts to contradict Dr. Snell's conclusion that Broecker's heroin was the actual cause of K.P.'s death.[8] Docket 21 ¶ 6. The prosecutor also put Broecker on notice at the change of plea hearing that she would be recommending the court impose the mandatory minimum 20-year sentence. CR Docket 96 at 18. Finally, at that same hearing, Broecker affirmed her factual basis statement and declared that she was "absolutely" satisfied with her counsel's representation. *Id.* at 5.

Thus, Ramstad's alleged lack of investigation into the "fundamental substantive issues of the case" and his assertion that, in hindsight, he should have moved to continue the change of plea hearing have an insignificant effect on whether Broecker entered a knowing and voluntary guilty plea. As such, even if Broecker's contentions are true, she is not entitled to relief. No evidentiary hearing is necessary, and Broecker's objection is overruled.

Next, the magistrate judge reported that, during the change of plea hearing, the court informed Broecker that the government bears the burden to prove beyond a reasonable doubt that her heroin was the actual cause of K.P.'s death. Docket 28 at 24. The magistrate judge stated that, "[k]nowing this, *and also knowing her attorney had not hired a toxicologist to contradict Dr. Snell's opinion*, Ms. Broecker chose to plead guilty." *Id.* at 24-25. Broecker objects to

---

[8] Beaumont also attempted to hire a medical examiner from the Cook County Medical Examiner's office. Docket 21 ¶¶ 12-13. The examiner agreed to look at K.P.'s records, but after Beaumont sent the records, he never heard back. *Id.* ¶ 15.

this conclusion and states that "this is a conclusion that is at odds with Ms. Broecker's claims, and one that only an evidentiary hearing can resolve." Docket 32 at 4. Broecker claims "Mr. Beaumont told her that they could and would still challenge the toxicology evidence at sentencing" for mitigation purposes.[9] *Id.* at 4-5.

No evidentiary hearing is necessary, however, because even accepting Broecker's allegations as true, she is not entitled to relief. Broecker was facing a mandatory minimum sentence of 20 years in custody. *See* 21 U.S.C. § 841(b)(1)(C). Broecker was ultimately sentenced to 20 years in custody. CR Docket 127. Any attempted mitigation at the sentencing hearing by a toxicology expert would have been futile because the sentencing judge could not impose a sentence below the 20-year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(C). In other words, even if Broecker's allegation is true, she has failed to show that she was prejudiced by Beaumont's statement. *See Hill*, 474 U.S. at 60 ("Because petitioner in this case failed to allege the kind of 'prejudice' necessary to satisfy the second half of the *Strickland v. Washington* test, the District Court did not err in declining to hold a hearing on petitioner's ineffective assistance of counsel claim."); *see also Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1106 (8th Cir. 2011) ("Even if true, petitioner's allegations would not entitle him to relief because he cannot prove *Strickland* prejudice on either claim."). Even if Broecker's allegation is true, she is not

---

[9] No toxicology evidence was ever presented at Broecker's sentencing. CR Docket 153 at 13-17.

15

entitled to relief. Thus, no evidentiary hearing is necessary, and Broecker's objection is overruled.

Broecker also objects to the magistrate judge's finding that Beaumont did consult with experts concerning the cause of K.P.'s death—Dr. William Swann and Dr. Jeffrey P. Walterscheid.[10] Docket 28 at 26. Broecker contends that "emails do not amount to an expert consultation" and instead demonstrate "Mr. Beaumont's own failure to investigate . . . and familiarize himself with the relevant facts" of the case. Docket 32 at 5. Broecker explains that Beaumont failed to follow up or correct Dr. Walterscheid when he relayed allegedly irrelevant information via email. *Id.* More importantly, according to Broecker, Dr. Walterscheid stated, "these days we often find heroin to be present along with fentanyl, which comes from tainted heroin to increase the potency and duration of euphoric effects." *Id.* Broecker asserts that "[t]his is another point of factual dispute that should not be resolved against Ms. Broecker at this stage." *Id.*

But no evidentiary hearing is warranted because, even accepting Broecker's assertions as true, the record shows that Beaumont's performance under *Strickland* was not deficient. Beaumont consulted with two potential experts about the case—Dr. William Swann and Dr. Jeffrey Walterscheid—and fully discussed their opinions with Broecker. *See* Docket 21 at 3, 7-13. After

---

[10] Dr. Swann is a board-certified physician in Internal Medicine and a Former Diplomat in Emergency Medicine. Docket 21 ¶ 6. Dr. Walterscheid is the Chief Toxicologist with the Armed Forces Medical Examiner System at Dover Air Force Base in Dover, Delaware. *Id.*

reviewing the correspondence, the court finds that Beaumont's communications with the two potential experts via email shows that his decision not to pursue their expertise any further was reasonable. In particular, Dr. Walterscheid opined that the heroin alone could have caused K.P.'s death. *Id.* at 7. Beaumont's decision to disengage with them was therefore reasonable because neither expert refuted Dr. Snell's testimony. Beaumont also reached out to the Cook County Medical Examiner but never heard back. *Id.* ¶¶ 13, 15. Even if the medical examiner could have refuted Dr. Snell's testimony, Beaumont told Broecker and her mother that the jury could still credit Dr. Snell's opinion and disregard the defense expert's opinion. *See id.* ¶ 16.

The record is also insufficient to establish that exculpatory expert testimony had the potential to change the outcome of her trial. *See Strickland*, 466 U.S. at 693-94, (stating that "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. . . . [Rather,] [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). As the magistrate judge noted, the government's case was strong: it had (1) photos of Broecker mailing the heroin; (2) her note indicating the heroin was dangerous and should be used carefully; and (3) Dr. Snell's opinion. Docket 28 at 27. Beaumont reviewed this with Broecker and advised her that her best chance would be to cooperate with the government and hope for a downward departure motion. Docket 21 ¶ 7.

17

Similarly, Broecker's assertion that a potential expert's testimony, including Dr. Scalzo's opinion, could have been used for mitigation purposes is contradicted by the record. Ramstad—who was the counsel of record at Broecker's sentencing—also consulted with three expert toxicologists after receiving lab reports that may have indicated a conclusion contrary to Dr. Snell's report. *See* CR Docket 72 ¶¶ 5, 12; CR Docket 76-5. But Ramstad did not present this evidence at sentencing for mitigation purposes. It can be presumed that no such mitigating evidence existed. This further supports the conclusion that Beaumont's decision to forgo expert testimony was reasonable. In the absence of prejudice and because Broecker's allegations are contradicted by the record, there is no need for an evidentiary hearing. Thus, Broecker's objection is overruled.

Broecker also objects to the magistrate judge's assertion that "no specific expert had been identified who would opine that the heroin Ms. Broecker gave K.P. was not the but-for cause of K.P.'s death." Docket 32 at 5-6. Broecker states that Dr. Scalzo was identified by her family and concluded that the actual cause of K.P.'s death was "polysubstance exposure" and "not Ms. Broecker's delivery" of heroin. *Id.* at 6.

In an email from Dr. Scalzo to K.P.'s family, Dr. Scalzo concluded that his "best impression" was that K.P. died from fentanyl. CR Docket 88 at 53. Glaringly absent in Broecker's objection, however, is the next sentence in Dr. Scalzo's conclusion, that "[t]he next assumption based on epidemiological data[] is that the fentanyl *was in the heroin sold to him.*" *Id.* (emphasis added).

Dr. Scalzo's conclusion therefore does not contradict Dr. Snell's conclusion that K.P. died as a result of ingesting the heroin that Broecker mailed to him. *See* CR Docket 52. No evidentiary hearing is required because, even if Broecker's assertion is true, she is still not entitled to relief. *See Ashker v. Class*, 152 F.3d 863, 876 (8th Cir. 1998) (finding no ineffective assistance of counsel because defendant "made no showing that the relevant tests by an expert witness would have exculpated him"). Thus, Broecker's objection is overruled.

### B.   Claim 2: Conflict of Interest

The affidavit Ramstad provided in this matter states that, but for his conflict of interest, he would have been free to testify to Beaumont's ineffectiveness at Broecker's hearing to withdraw her plea. Docket 14 ¶ 19. In the report and recommendation, the magistrate judge stated that Ramstad "*did* assert Mr. Beaumont rendered ineffective assistance of counsel while continuing to represent Ms. Broecker." Docket 28 at 33. Broecker objects, arguing for a more liberal interpretation of Ramstad's affidavit, explaining that "Mr. Ramstad's affidavit was meant to convey that he could have testified extensively in support of Ms. Broecker's claim, and would have—but for the fact that he was conflicted out of doing so because he was acting as her counsel." Docket 32 at 8; *see also id.* at 7 (attempting to clarify Ramstad's affidavit).

But no evidentiary hearing is necessary because, even if Ramstad was not conflicted and did testify, it would not have affected the conclusion that

Beaumont did not render constitutionally ineffective assistance of counsel. *See* Docket 28 at 25-28. The information Ramstad alleges in his affidavit is simply not new. *See id.* at 32-35. Broecker would not be entitled to relief even if the evidence was new because "[n]ewly discovered evidence cannot be the basis for habeas relief absent a showing that it 'would probably produce an acquittal on retrial.'" *Larson v. United States*, 905 F.2d 218, 221 (8th Cir. 1990) (quoting *Dumond v. Lockhart*, 885 F.2d 419, 421 (8th Cir. 1989)). Broecker has not made such a showing. In addition, the record reflects that it was not unreasonable for Beaumont to cease his inquiry into hiring a rebuttal expert because the experts he did correspond with did not refute Dr. Snell's testimony. *See* Docket 28 at 25-28; *see also Strickland*, 466 U.S. at 690-91 (stating that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation").

Further, Ramstad's statement in his affidavit—that but for the conflict of interest, he could have hired a toxicologist and presented that expert's opinion at Broecker's sentencing hearing—is contradicted by the record. Docket 28 at 33-35. Again, Ramstad consulted with three experts but never introduced or presented any expert opinion—not in support of the motion to withdraw the plea in July 2019, not at the sentencing hearing in October 2019, and not in support of this § 2255 motion filed three years later. The fact that no such evidence was ever offered was not due to a conflict of interest. Thus, no evidentiary hearing is required because, as the magistrate judge noted, even if

20

Ramstad was not conflicted and did testify, Broecker's conflict of interest claim fails. Broecker's objection is overruled.

### C.    Claim 3: *Brady* Claim

Broecker does not object to the magistrate judge's analysis with regard to her *Brady* claim. Thus, the court adopts the magistrate judge's recommendation to dismiss Broecker's *Brady* claim without the need for an evidentiary hearing.

## II.    Certificate of Appealability

To appeal the denial of a § 2255 motion, a petitioner must first seek a certificate of appealability from the district court. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The certificate may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet the substantial showing requirement, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Said otherwise, "[a] substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Broecker has not made a substantial showing that her claims are debatable among reasonable jurists, that a court could resolve her claims differently, or that any of the issues raised in her claims deserve further proceedings. Thus, a certificate of appealability is not issued.

## CONCLUSION

The court adopts the magistrate judge's recommendation and dismisses Broecker's § 2255 motion without holding an evidentiary hearing. As noted in the report and recommendation, Broecker's claims of ineffective assistance against Beaumont and Ramstad are without merit and his *Brady* claim fails as a matter of law. The court overrules all of Broecker's objections. Thus, it is

ORDERED that the Report and Recommendation (Docket 28) dismissing Broecker's § 2255 motion is adopted as supplemented herein without the need for an evidentiary hearing. The government's motion to dismiss (Docket 23) is granted. Broecker's objections to the Report and Recommendation (Docket 32) are denied.

Dated October 30, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE